**Melvin J. COLE and Harriet L. Cole, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–1111.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1988.
Decided April 11, 1989.

Ralph M. Bernstein, Chicago, Ill., for petitioner.

Calvin C. Curtis, Tax Div., Dept. of Justice, Washington, D.C., for respondent.

Before BAUER, Chief Judge, and WOOD, Jr., and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The Internal Revenue Service ("IRS") audited Melvin J. and Harriet L. Cole's income tax returns for 1979 and 1980 and disallowed certain deductions. A notice of deficiency was issued on January 11, 1984. The Coles filed a petition with the United States Tax Court contesting the deficiency determination. They also requested permission to amend their 1979 or 1980 tax return to claim a $50,000 bad debt deduction. The disagreement over the original deductions was eventually settled, but this last issue—whether the Coles were entitled to a bad debt deduction—proceeded to trial. The Tax Court ruled in favor of the IRS and disallowed the deduction. The Coles appeal.

## I. FACTS

During 1979 and 1980, the Coles, who are husband and wife, lived in Skokie, Illinois. Mr. Cole practiced law throughout this same period. On February 1, 1979, Mr. Cole made a $50,000 business loan to Borde, Berke & DeLeonardi, Ltd. ("BB & D"), a professional legal corporation in which Mr. Cole was a 15% shareholder. Howard Borde ("Borde"), as president of BB & D, signed a note payable on demand after May 1, 1979 with a 13.25% interest rate. Borde also signed the note personally as a guarantor. BB & D borrowed $125,000 from First State Bank of Chicago ("First State Bank") on February 2, 1979. As security, BB & D pledged to the bank its leasehold, leasehold improvements, furniture, fixtures, accounts receivable and contract rights. Borde, Mr. Cole and the other shareholders of BB & D each signed a personal guaranty of up to $125,000 to further secure payment of the bank loan. In a subordination agreement, Mr. Cole agreed to subordinate his loan in favor of

the bank's loan, and First State Bank specifically allowed BB & D to repay the $50,000 to Mr. Cole if BB & D was not in default on the bank loan at any time.[1]

BB & D made interest payments of $1,707.08 on May 3, 1979, $1,000.00 on July 24, 1980, and $500.00 on October 29, 1980 on the $50,000 loan made by Cole. No other payments were ever made on the loan. Mr. Cole left BB & D's employment in November or December 1979. In a 1985 letter, submitted as an exhibit to the Tax Court, Mr. Cole indicated to his attorney that he considered the loan uncollectable as of September 1979. Yet, despite Mr. Cole's assertion that he considered the loan uncollectable as of 1979, the Coles did not take a worthless debt deduction on their 1979 or 1980 tax returns. They did take other deductions for those same taxable years, however, including deductions for automobile expenses and depreciation, medical expenses, and for losses incurred by a mining partnership in which the Coles had invested.

The evidence presented to the Tax Court concerning BB & D's financial condition consisted of the corporation's federal tax returns for the years ending June 30, 1979, 1980 and 1981, and a security agreement related to the $125,000 loan made to BB & D by First State Bank. The Tax Court summarized the balance sheets contained in BB & D's tax returns as follows:

| | 1979 | 1980 | 1981 |
|---|---|---|---|
| Leasehold improvements, furniture & fixtures | 270,217 | 272,965 | 276,155 |
| Less depreciation | −20,590 | −52,943 | −85,780 |
| | 249,627 | 220,022 | 190,375 |
| Other assets | 10,736 | 40,250 | 4,437 |
| TOTAL ASSETS | 260,363 | 260,272 | 194,812 |
| First State Bank liability [2] | 131,145 | 111,357 | 88,327 |
| Other liabilities | 82,758 | 113,831 | 104,786 |
| TOTAL LIABILITIES | 213,903 | 225,188 | 193,113 |

The balance sheets reflect the value of BB & D's assets as cost of the assets less

depreciation; there is no indication of fair market value in the record. For the taxable year ended June 30, 1979, BB & D claimed that $133,070 of the leasehold improvements, furniture, and fixtures were subject to an investment tax credit in the amount of $13,307.

Borde reported $127,772 in income on his individual federal income tax return for 1979, and $57,881 in total income on his return for 1980. His personal financial statements indicated that Borde had a net worth of $54,500 and $213,500 during 1979 and 1980 respectively. Much of Borde's net worth consisted of his ownership interest in BB & D. Neither Borde nor BB & D ever declared bankruptcy. No legal action was ever instituted against BB & D or Borde by the Coles to collect the $50,000 loan.

## II. ANALYSIS

■ Section 166(a) of the Internal Revenue Code of 1954 allows taxpayers to take a deduction for business debts that become wholly or partially worthless during the taxable year.[3] 26 U.S.C. § 166(a). "Worthlessness" is a question of fact to be determined by the Tax Court in the first instance. *Boehm v. Commissioner*, 326 U.S. 287, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78 (1945) (question of whether corporate stock became worthless during taxable year is purely a question of fact to be determined by Tax Court); *Estate of Mann*, 731 F.2d 267, 275 (5th Cir.1984) ("Worthlessness in a particular year is a question of fact."); *see also Curtis v. Commissioner*, 183 F.2d 7, 10 (7th Cir.1950) ("The question of the year in which a loss is sustained is one of fact."). We therefore review the Tax Court's decision in the present case under the clearly erroneous standard of review. *See Eli Lilly & Co. v. Commissioner*, 856 F.2d 855, 860–61 (7th Cir.1988) (Tax Court's factual findings will be reversed only if clearly

---

**1.** The balance due on this loan was $2,325 as of January 22, 1986.

**2.** The balance due on the First State Bank loan exceeded $125,000 as of June 30, 1979 apparently because of accrued but unpaid interest.

**3.** Although the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, redesignated the Internal Revenue Code of 1954 the Internal Revenue Code of 1986, the years at issue in this suit predate the Reform Act. Therefore, all references are to the 1954 Code.

erroneous); *Decker v. Commissioner*, 864 F.2d 51, 54 (7th Cir.1988) (same); *Indianapolis Power & Light Co. v. Commissioner*, 857 F.2d 1162, 1165 (7th Cir.1988) (same). We will affirm the Tax Court's factual findings if "the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Decker*, 864 F.2d at 54.

■ When addressing a taxpayer's claim that a particular debt is worthless, the Tax Court should consider all pertinent evidence including the value of collateral securing the debt and the financial condition of the debtor. Treas.Reg. § 1.166–2(a); *Riss v. Commissioner*, 478 F.2d 1160, 1166 (8th Cir.1973). Ultimately however, the taxpayer bears the burden of proving by a preponderance of the evidence that a debt became worthless during a particular taxable year. *Estate of Mann*, 731 F.2d at 275. The taxpayer-creditor may not simply fail to enforce a debt and then claim the bad debt deduction. *Loewi & Co. v. Commissioner*, 232 F.2d 621, 624–25 (7th Cir.1956); *see also Liggett's Estate v. Commissioner*, 216 F.2d 548, 550 (10th Cir. 1954). The taxpayer-creditor need not pursue collection, however, when such efforts would be fruitless. "When surrounding circumstances indicate that a debt is worthless and uncollectable and that legal action ... would in all probability not result in the satisfaction ... on a judgment, a showing of these facts will be sufficient evidence of worthlessness." Treas.Reg. § 1.166–2(b). Proof of worthlessness generally requires a showing of identifiable events demonstrating the valuelessness of the debt and justifying abandonment of hope of recovery. *Estate of Mann*, 731 F.2d at 276. Events or facts which might substantiate a claim of worthlessness include:

> the debtor's serious financial reverses, insolvency, lack of assets, persistent refusals to pay on demand, ill health, death, disappearance, abandonment of business, bankruptcy, and receivership, as well as the debt's unsecured or subordinated status and expiration of the statute of limitations.

2 Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 33.3, at 33–11 (1981) (citations omitted). On the other hand, factors militating against a finding of worthlessness include:

> the creditor's failure to press for payment (especially if the debtor is a relative or friend), willingness to make further advances, availability of collateral or guarantees by third parties, the debtor's earning capacity, minor defaults, payment of interest, and sluggish business conditions.

*Id.* (citations omitted).

■ In the present case, the Coles argued at trial that they should be permitted to take the worthless debt deduction despite the fact that they never sued either BB & G or Borde on the note. They justified their failure to pursue legal remedies against BB & D on the theory that a judgment against the corporation would remain uncollectable because: (1) BB & D's major assets (leasehold improvements, furniture and fixtures) were of minimal value because of their nature; (2) the assets were subject to First State Bank's prior lien; (3) BB & D's net worth had dropped from $35,084 to $1,699 from 1979 to 1981; and (4) a suit against BB & D by the Coles would have triggered a suit by First State Bank in order to protect its $125,000 loan to BB & D.

The Tax Court rejected all of the Coles' arguments and found that they failed to prove that the debt became worthless in 1979 or 1980. The court stated that the Coles had not proven that BB & D's assets were insufficient to satisfy the $50,000 debt if seized and sold, since the record did not reveal their fair market value. Further, the Tax Court rejected the Coles' net worth argument on similar grounds, because there was no evidence that their net worth calculations approximated the true economic value of BB & D as a business. Finally, the court concluded that a suit by the Coles against BB & D would not necessarily trigger a suit against the corporation by First State Bank. BB & D was not in default on its bank loan; First State Bank

therefore would have no basis or desire to sue BB & D.

In essence, the Tax Court ruled that the Coles failed to carry their burden of proof on the issue of worthlessness. As the Tax Court pointed out, the corporation's 1979 tax return revealed an investment tax credit in the amount of $13,307, implying that it held personal property worth $133,070, and yet the Coles made no showing as to why this property could not have been seized and sold to collect the debt. Secondly, although the Coles' calculation of the drop in BB & D's net worth from $35,084 on June 30, 1980 to $1,699 on June 30, 1981 is correct, it is based only on the figures provided in the corporation's tax returns—figures which do not reflect such assets as good will or open files, "which, to a professional legal service business such as BB & D, can be quite valuable." [4] Further, BB & D continued to service the $125,000 loan made to it by First State Bank, so that by the time this case was submitted to the Tax Court on stipulated facts in January 1986, BB & D owed only $2,325 on the note. Based on the evidence (or rather the lack thereof), in the context of the whole record, we agree with the Tax Court—the Coles failed to carry their burden of proving that the $50,000 debt became worthless in 1979 or 1980. *Cf. Holland v. Commissioner,* 728 F.2d 360, 360–62 (6th Cir.1984); *Allen–Bradley Co. v. Commissioner,* 112 F.2d 333, 335 (7th Cir.1940). The Tax Court's ruling was therefore not clearly erroneous and we must affirm.

### III. CONCLUSION

For the foregoing reasons the decision of the Tax Court is AFFIRMED.

4. *Cole v. Commissioner,* 53 T.C.M. (CCH) 753, 755 (1987).