**JOSTENS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 90–2907.**

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1991.

Decided Feb. 5, 1992.

---

5. *Jefferson County* and the present case were not decided by the same district judge.

Clinton A. Schroeder, Minneapolis, Minn., argued (Myron L. Frans, Robert J. McReavy and William R. Peck, on brief), for petitioner.

Robert W. Metzler, Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and David I. Pincus, on brief), for respondent.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FAGG, Circuit Judge.

Jostens, Inc. appeals the Tax Court's decision determining deficiencies in Jostens's income tax for its 1980, 1981, and 1982 tax years. The Tax Court thoroughly addressed Jostens's fact-specific contentions.

58 T.C.M. (CCH) 933 (1989), *modified,* 58 T.C.M. (CCH) 1520 (1990). Thus, we affirm without extensive discussion.

■ Jostens first contends the Tax Court erroneously concluded Jostens failed to justify its write-down of a portion of its jewelry-stone inventory that it considered "inactive." To justify the write-down of its inactive stones, Jostens agrees it must show they were "unsalable at normal prices or unusable in the normal way." *See* Treas. Reg. § 1.471–2(c) (as amended in 1973). The Tax Court found Jostens failed to make this showing. The record indicates Jostens did not scrap its inactive stones and many of them were commingled with indistinguishable stones that Jostens sold at normal prices and used in the normal way. Thus, the Tax Court's finding is not clearly erroneous.

■ Second, Jostens contends the Tax Court committed error in rejecting Jostens's method of calculating each year's addition to its bad-debt reserve. *See* I.R.C. § 166(c) (1976) (repealed 1986). Jostens assessed finance charges on its customers' past due accounts, but often cancelled unpaid finance charges. Jostens then included the cancelled finance charges as bad debts when calculating annual additions to its bad-debt reserve. Finding the cancelled finance charges were not worthless debts, the Tax Court concluded Jostens could not include the cancelled finance charges in its calculation. *See Thompson v. Commissioner,* 761 F.2d 259, 264–65 (6th Cir.1985); *Roth Steel Tube Co. v. Commissioner,* 620 F.2d 1176, 1179–80 (6th Cir.1980). Based on the record before us, we cannot say the Tax Court's finding is clearly erroneous. *Cole v. Commissioner,* 871 F.2d 64, 66–67 (7th Cir.1989) (worthlessness is a question of fact reviewable under the clearly erroneous standard). Jostens cancelled a majority of its unpaid finance charges to encourage repeat business and promote good will, and Jostens presented no evidence that the unpaid finance charges were uncollectible. *See Roth Steel Tube,* 620 F.2d at 1181–82 (collectible debt is not worthless if the taxpayer voluntarily cancels it); *Estate of Lig-*

*gett v. Commissioner*, 216 F.2d 548, 550 (10th Cir.1954) ("creditor may not voluntarily cancel a debt [that] has value and then claim a deduction because the debt is now valueless"); *see also Cole*, 871 F.2d at 67 ("taxpayer-creditor may not simply fail to enforce a debt and then claim the bad debt deduction"). Because Jostens's cancelled finance charges were not worthless debts, the Tax Court properly concluded Jostens could not include the cancelled finance charges in its calculation. *See Thompson*, 761 F.2d at 264–65; *Roth Steel Tube*, 620 F.2d at 1179–80. Like the Tax Court, we do not question the soundness of Jostens's business practice of cancelling the finance charges. As the Tax Court noted, "[Jostens's] cancellation of [its] finance charges may give rise to a deduction under some other provision of the Code in the year [the finance charges] are cancelled." 58 T.C.M. at 944.

■ Third, Jostens contends the Tax Court should have used the excess earnings method to value the intangible assets Jostens acquired when it purchased the Durand Corporation (Durand). The Tax Court found Jostens paid the fair market value for Durand and, accordingly, used the residual method. *See R.M. Smith, Inc. v. Commissioner*, 591 F.2d 248, 252–53 (3d Cir.), *cert. denied*, 444 U.S. 828, 100 S.Ct. 54, 62 L.Ed.2d 36 (1979). Jostens stipulated its purchase of Durand resulted from bona fide arm's-length negotiations with an unrelated seller, and Jostens's own expert testified Jostens knew all the facts relevant to Durand's value. Thus, the Tax Court's finding that Jostens paid the fair market value for Durand is not clearly erroneous, *see Estate of Palmer v. Commissioner*, 839 F.2d 420, 422 (8th Cir.1988); *UFE, Inc. v. Commissioner*, 92 T.C. 1314, 1325 (1989), and the Tax Court properly used the residual method to value Durand's intangible assets, *see R.M. Smith, Inc.*, 591 F.2d at 252–53.

■ Finally, Jostens contends the Tax Court abused its discretion in denying Jostens leave to amend its petition to claim additional foreign tax credits. Jostens paid a portion of its additional foreign taxes more than a year before trial and the remaining portion before submitting its post-trial reply brief. Jostens, however, did not seek leave to claim the credits until Jostens filed its motion for reconsideration of the Tax Court's decision. Based on unexcused delay, prejudice to the Commissioner, and inconvenience to the Tax Court, the Tax Court denied Jostens leave to amend. Because the Tax Court had good reason for its denial, the Tax Court did not abuse its discretion. *See Thompson–El v. Jones*, 876 F.2d 66, 67 (8th Cir.1989); *see also Scallen v. Commissioner*, 877 F.2d 1364, 1375–76 (8th Cir.1989).

We thus conclude the Tax Court did not commit error in determining Jostens's income tax deficiencies. Accordingly, we affirm.