DALE F. RENNER AND KATHRYN A. RENNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Renner v. Commissioner
Docket No. 4663-93
United States Tax Court
T.C. Memo 1994-263; 1994 Tax Ct. Memo LEXIS 264; 67 T.C.M. (CCH) 3072; June 8, 1994, Filed *264 In 1982, P sued his former employer, M, for age discrimination under the Age Discrimination in Employment Act (ADEA). In 1985, prior to trial, M settled with P, and agreed to pay P $ 25,000 a year for 10 years, beginning in 1985. On his 1985 and 1986 Federal income tax returns, P deducted legal fees incurred in connection with the lawsuit. P paid taxes on the $ 25,000 payment for 1989, the year in issue. P subsequently filed for and received a refund of such taxes. R later issued a report to P stating that the $ 25,000 payment was taxable income; P protested this report. R's Appeals Office sent P a letter informing him that the case was being closed and that there was no deficiency for 1989. Thereafter, R issued P a notice of deficiency reflecting her determination that the $ 25,000 payment was income. R's primary argument was that sec. 104(a), I.R.C., did not apply to the payment. Just prior to trial, R asserted that the tax benefit rule required P to include the portion of the $ 25,000 payment attributable to the related legal fees that he had previously deducted. In connection with this assertion, R argues that P must include the entire payment in income because P failed *265 to show how much, if any, of the $ 25,000 payment did not represent a recovery of the previously deducted legal fees. Held: R is not barred by statute or regulation from reopening P's case. Held, further, R is not equitably estopped from reopening P's case. Held, further, R bears the burden of proof with respect to her tax benefit theory. Held, further, the $ 25,000 payment is not includable in P's income. For petitioners: Robert L. Eberhart. For respondent: Joseph P. Grant. LARO
LARO
MEMORANDUM OPINION LARO, Judge: Respondent determined deficiencies in the 1988 and 1989 Federal income tax of Dale F. Renner and Kathryn A. Renner (petitioners) in the amounts of $ 162,637 and $ 7,000, respectively. Most of the issues in this case have been settled. [1] The sole issue for decision is whether a $ 25,000 payment to Dale F. Renner by his former employer is partly or wholly includable in his 1989 income. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. The term "petitioner" in the singular refers to Dale F. Renner. *266 This case has been submitted fully stipulated under Rule 122. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife who resided in Beaver, Ohio, at the time they filed their petition. On October 14, 1982, petitioner filed a Complaint in the U.S. District Court for the Northern District of Texas against his former employer, the Mead Corp. (Mead), alleging that Mead had forced him into retirement because of his age. Petitioner sought damages under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), including liquidated damages and reasonable attorney's fees. [2] On April 4, 1984, petitioner filed an Amended Complaint in the action against Mead. The Amended Complaint alleged, in part, various acts of age discrimination, as well as acts of libel and slander *267 by Mead. In the Amended Complaint, petitioner continued to seek damages under ADEA, including liquidated damages and attorney's fees. In March 1985, petitioner and Mead signed a Settlement Agreement and Full and Final Release of Claims (the Settlement Agreement). Under the Settlement Agreement, Mead agreed to pay petitioner $ 40,000 in compromise of petitioner's libel and slander claims, and $ 25,000 per year for a period of 10 years, beginning April 1, 1985. The annual payments were in compromise of petitioner's possible claims of "reinstatement, compensatory damages, punitive damages, back pay, front pay, emotional distress, mental suffering, injury or damages to reputation, liquidated damages, costs, and attorneys' fees." The annual payments did not reduce petitioner's retirement payments from Mead. On their original and amended 1985 *268 Federal income tax returns, petitioners deducted $ 17,065 for legal expenses related to "job discrimination". Petitioners did not report the 1985 payment from Mead. Mead sent petitioner the annual payments for 1986, 1987, and 1988 in March of each year, unreduced by an withholding. Petitioners reported and paid tax on those payments. On their 1986 Federal income tax return, petitioners deducted $ 120 for "Legal Expenses Job Discrimination Suit". In March 1989, the Internal Revenue Service (IRS) raised with Mead the issue of whether Mead should be withholding taxes from the annual payments. On April 7, 1989, Mead sent petitioner a check for $ 18,122.50, explaining that the IRS had advised Mead that it must withhold Federal income taxes and employment taxes from the annual payments. On March 29, 1990, Mead sent petitioner a check in the amount of $ 4,537.50, explaining that it had withheld $ 20,462.50 for 1985, 1986, and 1989 Federal income taxes and employment taxes. On April 16, 1990, petitioners timely filed their 1989 Federal income tax return using the filing status "Married filing joint return". Petitioners included the $ 25,000 annual payment in their 1989 income, and *269 reported the Federal income tax that had been withheld. On June 1, 1990, David Mullin (Mullin), acting on behalf of petitioner, sent Mead a copy of Rickel v. Commissioner, 900 F.2d 655 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989), which held that payments received from a taxpayer's former employer in settlement of the taxpayer's age discrimination lawsuit were excludable from taxable income because the payments were received on account of personal injuries. In his letter, Mullin stated that, in light of Rickel, petitioners would be amending their 1986 through 1989 returns to seek a refund of all Federal income taxes and employment taxes that were paid with respect to the settlement proceeds. [3] On June 17, 1990, petitioners filed amended Federal income tax returns for their 1988 and 1989 taxable years. In each amended return, petitioners claimed that the $ 25,000 received pursuant to the Settlement Agreement had been incorrectly included in income. In July and August 1990, respondent abated the assessment for petitioners' 1988 and 1989 taxable years in the amount of the overpayments reflected on *270 petitioners' returns for those years, and refunded to petitioners those amounts plus interest. On March 26, 1991, respondent issued petitioners a "Report of Individual Income Tax Examination Changes" for their 1988 and 1989 taxable years; respondent alleged in this report that the amounts received by petitioners pursuant to the settlement agreement with Mead were taxable income. On May 29, 1991, petitioners filed a protest with respect to this report. Petitioners' *271 position in their protest was that the $ 25,000 payments were not taxable because payments in settlement of claims under ADEA are payments "on account of personal injuries or sickness" within the meaning of section 104(a)(2). On November 22, 1991, respondent's Appeals Office sent petitioners a form letter with respect to their 1988 and 1989 taxable years; this letter informed petitioners that the Appeals Office was closing the case on an agreed basis and that no further action needed to be taken because there was neither a deficiency nor an overassessment. On December 18, 1992, respondent issued a notice of deficiency to petitioners, increasing petitioners' 1988 and 1989 taxable income by $ 25,000 for each year, that is, the amount received from Mead. [4] The notice of deficiency states, in relevant part: In the year 1989, Dale F. Renner received $ 25,000.00 pursuant to a settlement agreement with respect to an action brought under the Age Discrimination in Employment Act (ADEA). This amount was reported as taxable income on the original Form 1040 for 1989. However, a claim for refund was filed on Form 1040X and was allowed by the Commissioner. It has now been determined that *272 the $ 25,000.00 does constitute taxable income. Accordingly, your taxable income for the year 1989 is increased by $ 25,000.00.
Respondent's position until shortly before trial was that the $ 25,000 payments were not excludable from petitioners' gross income under section 104(a)(2). Eighteen days before the beginning of the trial session, respondent asserted a new theory of the case. She asserted that even if section 104(a)(2) applied to exclude the settlement payments from income, the tax benefit rule overrides section 104(a)(2) and requires inclusion of the 1989 $ 25,000 payment in petitioners' gross income to the extent of their prior deductions for related attorney's fees. Petitioners' 1982 through 1984 returns are not in the record. Petitioners argue that respondent improperly opened a closed case, in violation of section 601.106(h)(3), *273 Statement of Procedural Rules, and section 6406. Section 601.106(h)(3), Statement of Procedural Rules, provides: A case not docketed in the Tax Court and closed by Appeals on a basis not involving concessions made by both Appeals and the taxpayer will not be reopened by action initiated by the Service unless the disposition involved fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or such other circumstance that indicates that failure to take such action would be a serious administrative omission, and then only with approval of the Regional Director of Appeals.
Petitioners' reliance on section 601.106(h)(3), Statement of Procedural Rules, and section 6406 is misplaced. It is well settled that procedural rules such as section 601.106(h)(3), Statement of Procedural Rules, are not mandatory, and compliance with such rules is not essential to the validity of the notice of deficiency. Luhring v. Glotzbach, 304 F.2d 560, 563 (4th Cir. 1962); Schwager v. Commissioner, 64 T.C. 781, 787 (1975); Collins v. Commissioner, 61 T.C. 693, 701 (1974) *274 (dictum). Thus, petitioners' argument has no merit. Petitioners' reliance on section 6406 is also misplaced. Section 6406 provides, in relevant part: In the absence of fraud or mistake in mathematical calculation, the findings of fact in and the decision of the Secretary upon the merits of any claim presented under or authorized by the internal revenue laws * * * shall not, except as provided in subchapters C and D of chapter 76 (relating to the Tax Court), be subject to review by any other administrative or accounting officer, employee, or agent of the United States.
The purpose of this section is to prohibit review of a decision of the Commissioner by employees of other agencies. Crocker v. United States, 323 F. Supp. 718, 724 (N.D. Miss. 1971); see also Hacker v. Commissioner, T.C. Memo. 1993-285. Section 6406 does not estop the Commissioner from reviewing her own decisions. Hacker v. Commissioner, supra.Payment of a refund also does not estop the Commissioner from determining a deficiency in the same year. Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985); *275 Warner v. Commissioner, 526 F.2d 1, 2 (9th Cir. 1975), affg. T.C. Memo. 1974-243; Hacker v. Commissioner, supra.
Congress has provided that closing agreements under section 7121 and compromise agreements under section 7122 are the exclusive means for the IRS to settle civil tax disputes with finality. Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929); Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972); see also Sampson v. Commissioner, 444 F.2d 530, 531 (6th Cir. 1971), affg. T.C. Memo. 1970-212. The record is devoid of any evidence that petitioners and respondent entered into a valid closing agreement or compromise agreement.[5]
*276 Petitioners further argue that respondent is estopped from assessing tax on the $ 25,000 payment by virtue of the letter sent by respondent's Appeals Office. In a tax case, the doctrine of estoppel is not applicable unless the party relying on it establishes all of the following elements at a minimum: (1) There must be a false representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. * * *
Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971). Petitioners have not begun to meet their burden of proof. Among other things, petitioners have not presented any evidence that they were adversely affected by their reliance on the letter from respondent's Appeals Office. Cf. Schwager v. Commissioner, supra at 789. Accordingly, *277 the doctrine of estoppel does not apply in the instant case. Turning now to petitioners' final argument, gross income does not include the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. Sec. 104(a)(2); United States v. Burke, 504 U.S.    , 112 S. Ct. 1867 (1992); Robinson v. Commissioner, 102 T.C. 116, 125 (1994); Threlkeld v. Commissioner, 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81 (6th Cir. 1988). This Court has held that damages awarded for (or in settlement of) claims under ADEA are excludable under section 104(a)(2) as compensation for a "tortlike personal injury". Downey v. Commissioner, 100 T.C. 634, 637 (1993). But cf. Maleszewski v. United States, 827 F. Supp. 1553, 1555 (N.D. Fla. 1993). Because all of petitioner's claims asserted in his Complaint and Amended Complaint and settled in the Settlement Agreement for the ten $ 25,000 payments were under ADEA, the $ 25,000 payment received in 1989, including any portion thereof *278 allocable to attorney's fees, is excludable under section 104(a)(2). See, e.g., Cassino v. Commissioner, T.C. Memo. 1994-65; Fite v. Commissioner, T.C. Memo. 1993-594; Johnson-Waters v. Commissioner, T.C. Memo. 1993-333. Respondent argues that although the $ 25,000 payment may otherwise be nontaxable, it is includable in petitioners' gross income to the extent that it represents a recovery of attorney's fees that petitioners had previously deducted. In other words, respondent argues, the tax benefit rule applies to require inclusion in petitioners' income of amounts paid to reimburse previously deducted attorney's fees. Respondent further argues that petitioners bear the burden of proving how much, if any, of the $ 25,000 payment was not allocable to such attorney's fees. [6]
Respondent's tax benefit theory is different from the theory relied *279 on in her notice of deficiency and in her pleadings. The notice of deficiency recites the tax history of petitioner's 1989 payment from Mead, including the fact that respondent had issued a refund of the taxes petitioners paid on it, and concludes: "It has now been determined that the $ 25,000.00 does constitute taxable income. Accordingly, your taxable income for the year 1989 is increased by $ 25,000.00." This statement, which merely refers to income, would not necessarily alert petitioners that they needed to determine the amount of deductions for attorney's fees they had claimed on their returns. It also would not reasonably put petitioners on notice of a tax-benefit argument, particularly since the dispute at the administrative level was whether section 104(a)(2) applied to exclude ADEA payments from income. In addition, respondent's answer contained no reference to the tax benefit rule; respondent could have amended her answer to assert it, but she did not. The Commissioner bears the burden of proof with respect to a new matter. Rule 142(a). [7] A matter may be a "new matter" where it was not pleaded by the Commissioner and different evidence is needed to disprove her new *280 argument. Church of Scientology v. Commissioner, 83 T.C. 381, 472 (1984), affd. 823 F.2d 1310 (9th Cir. 1987); Achiro v. Commissioner, 77 T.C. 881, 890 (1981). In contrast, where the notice of deficiency is stated in general terms, and can be sustained on several different theories, the burden remains on the taxpayer as long as the Commissioner relies on a theory or theories consistent with the notice of deficiency. Zmuda v. Commissioner, 79 T.C. 714, 722 n.19 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Sidney v. Commissioner, 30 T.C. 1155 (1958), affd. 273 F.2d 928 (2d Cir. 1960); Jostens, Inc. v. Commissioner, T.C. Memo. 1989-656, adhered to in part on reconsideration T.C. Memo. 1990-97, affd. 956 F.2d 175 (8th Cir. 1992). However, even where the notice of deficiency is broadly worded so that it accommodates a new argument by the Commissioner, the taxpayer will not bear the burden of proof *281 where he or she has been led to believe, up to the point of trial, that the Commissioner has limited her arguments to one or more theories, and the Commissioner raises a new argument at the 11th hour. See, e.g., Baird v. Commissioner, 438 F.2d 490, 493 (3rd Cir. 1971), vacating T.C. Memo. 1969-67; Medina v. Commissioner, T.C. Memo. 1983-253. *282 Although in the instant case, respondent asserted her new position prior to trial, she did so only 18 days before trial, when petitioners did not have time to obtain the evidence necessary to rebut respondent's tax benefit theory. Because the notice of deficiency and respondent's answer did not put petitioners on notice of respondent's tax benefit argument, this argument is a 'new matter", and respondent bears the burden of proof on this issue. Rule 142(a). The tax benefit rule consists of two components, the inclusionary component and the exclusionary component. Hudspeth v. Commissioner, 914 F.2d 1207, 1212 (9th Cir. 1990), affg. in part, revg. and remanding on another issue T.C. Memo. 1985-628; Frederick v. Commissioner, 101 T.C. 35 (1993); see also Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 380-381 n.12 (1983). The inclusionary component provides that an amount deducted from gross income in one year is included in income in a subsequent year if an event occurs in the subsequent year that is fundamentally inconsistent with the premise on which the *283 deduction had previously been based. Hillsboro Natl. Bank v. Commissioner, supra at 372; Hudspeth v. Commissioner, supra at 1212. The exclusionary component limits the income that must be recognized in the subsequent year to the amount of the tax benefit that resulted from the deduction. Hillsboro Natl. Bank v. Commissioner, supra at 388; Hudspeth v. Commissioner, supra at 1212. [8] To summarize the tax benefit rule, an amount must be included in gross income in the current year if, and to the extent that: (1) The amount was deducted in a year prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code (the Code) does not prevent the inclusion in gross income.
*284 Under the Settlement Agreement, petitioner was entitled to annual payments for 10 years, including 1985 and 1986. The uncontroverted facts establish that petitioners deducted attorney's fees in 1985 and 1986 in connection with the ADEA lawsuit. On this record, respondent has failed to provide us with a sufficient basis to determine how much, if any, of the $ 25,000 payment to petitioner in 1989 represented a recovery of those previously deducted fees. The difficulty of allocation is compounded because it is unclear whether compensation for petitioner's legal expenses was confined to one or more payments, or was prorated over all 10 years. Thus, we cannot determine that a fundamentally inconsistent event occurred in 1989 which would require inclusion of income under the tax benefit rule. Respondent argues that petitioners also deducted attorney's fees in 1982 through 1984. However, as we have previously established, respondent has the burden of proof on this issue. Because there is no evidence from the record from which we could draw the conclusion that petitioner deducted attorney's fees in those years, we cannot apply the tax benefit rule to require inclusion in income in *285 the year in issue. We have considered the parties' other arguments, and find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. The parties filed a Stipulation of Settled Issues on Dec. 30, 1993.↩
2. Petitioner alleged that he had to employ counsel and pay him reasonable attorney's fees, and that these fees would amount to at least $ 10,000 during the trial of his case.↩
3. In his June 1, 1990, letter, David Mullin further requested that Mead pay petitioner the $ 25,000 due Apr. 1, 1990, together with interest at the rate of 6 percent from and after the 30th day after the $ 25,000 became due. Later in 1990, petitioner filed a petition with the County Court for Potter County, Texas, alleging that Mead wrongfully failed and refused to pay him the sum due for 1990. In November 1990, petitioner and Mead settled the withholding tax controversy. On Nov. 20, 1990, Mead sent petitioner a check in the amount of $ 28,232.02.↩
4. Respondent subsequently conceded that assessment of additional taxes for petitioners' 1988 taxable year was barred by the 3-year period of limitation under sec. 6501.↩
5. In this regard, we note that a closing letter does not fall within the purview of sec. 7121. Schwager v. Commissioner, 64 T.C. 781, 789↩ (1975).
6. The Settlement Agreement did not allocate a specific amount to attorney's fees.↩
7. Rule 142(a) provides: The burden of proof shall be upon the petitioner * * * except that, in respect of any new matter, * * * pleaded in the answer, it shall be upon the respondent. * * *
A matter can be a "new matter" regardless of whether it is p:.eaded in the answer or raised subsequently. See, e.g., Medina v. Commissioner, T.C. Memo. 1983-253 (new matter raised at trial); Denman v. Commissioner, T.C. Memo. 1981-332 (new matter raised at trial); Hahn v. Commissioner, T.C. Memo. 1979-429↩ (new matter on brief).
8. The exclusionary component of the tax benefit rule, which is partially codified in sec. 111(a), but which may exist outside the provisions of that section, Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 388 (1983); Dobson v. Commissioner, 320 U.S. 489, 505-506↩ (1943), does not become an issue unless, and until, the inclusionary component of the rule is first satisfied.