STEPHENS GROUP, INC., FORMERLY STEPHENS, INC., ET AL., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stephens Group v. Commissioner
Docket No. 28457-92
United States Tax Court
T.C. Memo 1995-158; 1995 Tax Ct. Memo LEXIS 152; 69 T.C.M. (CCH) 2358; April 6, 1995, Filed *152 An appropriate order granting in part and denying in part respondent's motion for partial summary judgment will be issued. For petitioner: Jackson Farrow, Jr.
For respondent: Robert J. Misey, Jr. LARO
LARO
MEMORANDUM OPINION LARO, Judge: Respondent moves pursuant to Rule 121 [1] for an order granting partial summary judgment in her favor on the issue of whether a loan and pledge of funds made by Real Properties, Inc. (RPI), to or for the benefit of United Pacific Trading Co., Inc. (UPT), were deductible as bad debts for Stephens Group, Inc.'s (petitioner's) taxable year ended May 31, 1986. The facts presented below are based on the pleadings and other pertinent materials in the record. Rule 121(b). They are stated solely for purposes of deciding the motion. Fed. R. Civ. P. 52(a); see also Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), *153 affd. 17 F.3d 965 (7th Cir. 1994). Background
RPI is petitioner's wholly owned subsidiary. RPI entered into a joint venture with Lippo Holding Co. (Lippo Holding). The joint venture was named United Pacific Trading Co., Inc. (UPT). UPT's business was the importing of wood and wood products from Asia. UPT incurred operating losses from its genesis. During the year in issue, UPT's current liabilities exceeded its current assets and its total liabilities exceeded its total assets. As a result, the accounting firm of Peat, Marwick & Mitchell expressed concern regarding UPT's ability to continue in existence in preliminary drafts of UPT's financial statements for the periods ended May 31, 1984, December 31, 1984, and December 31, 1985. Kalamur Melapi Trading Limited (KMTL) acquired stock in UPT between the fall of 1983 and the spring of 1986. Immediately thereafter, UPT's outstanding stock was owned as follows: Shareholder
Number of Shares
Percentage
RPI
5,000
22.5
Lippo Holding
5,000
22.5
KMTL
10,000
45.0
[2] Don Wright 2,223
10.0
*154 UPT borrowed $ 2 million from the Bank of Central Asia (BCA) on October 1, 1985. BCA was partially owned at that time by the families of James Riady, the President of Lippo Holding, and Anthony Salim, who was associated with KMTL. Subsequently, on October 11, 1985, RPI advanced $ 1 million to UPT (RPI's loan). Both loans were evidenced by promissory notes. BCA and RPI executed an agreement on October 22, 1985, recognizing their respective loans to UPT and agreeing that any payments under either note would be pro-rated two-thirds to BCA and one-third to RPI. Both notes were canceled on September 30, 1986, as part of the reorganization of UPT and the creation of a new entity. On December 11, 1985, RPI pledged a $ 1,250,000 time deposit to BCA (RPI's pledge) in order to secure a line of credit from BCA to UPT. In September 1986, as part of UPT's reorganization, BCA released RPI's pledge. BCA requested the release in lieu of its proceeding directly against RPI's pledge. This release was part of an agreement whereby RPI would pay the released funds to UPT for satisfaction of UPT's obligation to BCA. RPI continued to monitor UPT's activities and participated in meetings. RPI *155 was aware of UPT's financial condition. UPT did not make any payments to RPI on the $ 1 million note, nor did RPI take any specific collection actions. Petitioner contends that such attempts would have been futile given the financial condition of UPT. After May 31, 1986, UPT and its shareholders contemplated various ideas that culminated in a reorganization plan for UPT. On September 30, 1986, the shareholders reorganized UPT. The shareholders transferred UPT's profitable ongoing operations to a new entity named United Pacific Trading International, Inc. (UPTI). The only assets of UPT remaining after the reorganization were claims against various parties. As a result of the reorganization, the stock of UPTI and UPT was wholly owned by International Holdings, Inc., whose stock was, in turn, owned as follows: Shareholder
Percentage
RPI
25
Lippo Holding
25
KMTL
50
For the taxable year ending May 31, 1986, petitioner claimed bad debt losses for: (1) RPI's loan, and (2) RPI's pledge. Respondent disallowed these amounts as bad debt losses because she determined that these obligations did not become wholly worthless during the taxable year ended May 31, 1986. [3]
*156 Discussion
Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). A decision on the merits of a taxpayer's claim can be made via summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). We grant summary judgment only after carefully ascertaining that the moving party has met all of the criteria. Associated Press v. United States, 326 U.S. 1, 6 (1945); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The Court will not resolve disagreements over material factual issues in a summary judgment proceeding. Espinoza v. Commissioner, supra at 416. The burden of proving that there is no genuine issue of material fact is on the moving *157 party, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Kroh v. Commissioner, supra at 390. A fact is material if it "tends to resolve any of the issues that have been properly raised by the parties." 10A Wright et al., Federal Practice and Procedure: Civil, sec. 2725, at 93 (2d ed. 1983). A motion for summary judgment will be denied if there is reasonable doubt as to the facts at issue. Hoeme v. Commissioner, 63 T.C. 18, 20 (1974). Respondent alleges that RPI's loan and RPI's pledge did not become worthless during the taxable year ended May 31, 1986, because of the following four factors; (1) No identifiable event occurred, (2) RPI expected UPT to continue operations in some form and it did continue, (3) RPI made further advances after the taxable year ended May 31, 1986, and (4) RPI did not exhaust its collection means. Petitioner contends that while the presence of some of these factors may indicate that a debt is not worthless, these factors taken as a group are not determinative. According *158 to petitioner, the ultimate question is whether the totality of factors was sufficient for petitioner to form a reasonable basis for abandoning hope of future recovery of the funds. Because such a standard requires inherently factual determinations, petitioner contends respondent's motion for partial summary judgment must be denied. We agree with respondent with respect to RPI's pledge; however, we agree with petitioner with respect to RPI's loan. A bad debt is deductible only in the year it becomes worthless. Denver & Rio Grande W. R.R. v. Commissioner, 32 T.C. 43, 56 (1959), affd. 279 F.2d 368 (10th Cir. 1960); Feinstein v. Commissioner, 24 T.C. 656, 658 (1955). When or whether a debt becomes worthless is a question of fact, the answer to which lies in an examination of numerous factors, none of which is determinative in and of itself. Boehm v. Commissioner, 326 U.S. 287, 293 (1945); Estate of Mann v. United States, 731 F.2d 267, 275 (5th Cir. 1984); Dallmeyer v. Commissioner, 14 T.C. 1282, 1291 (1950). *159 The time that a debt becomes worthless must be decided by the trier of fact after he or she has considered all of these factors. Cole v. Commissioner, 871 F.2d 64, 66 (7th Cir. 1989), affg. T.C. Memo. 1987-228. The factors that have been considered by courts in determining worthlessness include the subordinate status of the debt; a decline in the debtor's business; the decline in value of the property secured by the debt; claims of prior creditors far in excess of the fair market value of all assets available for payment; the overall business climate; the debtor's earning capacity; the debtor's serious financial reverses; guarantees on the debt; events of default, whether major or minor; insolvency of the debtor; abandonment of assets of business; ill health, death, or disappearance of the principals; bankruptcy or receivership; actions of the obligee in pursuing collection, i.e., whether the obligee unreasonably failed to take collection action and then claimed the deduction; subsequent dealings between the obligee and obligor; and lack of assets. See American Offshore, Inc. v. Commissioner, 97 T.C. 579, 594 (1991). *160 With respect to the RPI's loan, respondent looked solely to four factors which she alleges establish, as a matter of law, that RPI's loan did not become worthless during the year in issue. While some of these factors tend to show that RPI's loan was not worthless in the subject year, they are not conclusive. For instance, legal action is not always required before a bad debt deduction is allowable. A bad debt may be deducted, for example, where the surrounding circumstances indicate that the debt is worthless and uncollectible, and legal action to enforce payment would in all probability not result in the collection of the debt. American Offshore, Inc. v. Commissioner, supra at 595. Where a creditor is familiar with the debtor's business and knows that the debtor is hopelessly insolvent, he need not attempt to collect the debt where his or her attempts to do so would be futile. See Herskovits v. Commissioner, 110 F.2d 272, 273 (2d Cir. 1940). The four factors referred to by respondent may ultimately lead to a determination that RPI's loan did not become worthless during the year in issue. However, we need to look *161 to the totality of the circumstances surrounding RPI's loan and not just to the four factors singled out by respondent. We hold that with respect to RPI's loan, this case is not ripe for summary adjudication. With respect to RPI's pledge, petitioner has not set forth facts showing a genuine issue for trial. Accordingly, we use summary adjudication to decide whether petitioner may deduct a bad debt for the year in issue with respect to RPI's pledge. We conclude that it may not. In so concluding, we find relevant the fact that petitioner has not alleged (and the record does not suggest) that petitioner paid any amount on RPI's pledge during the year in issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). We analogize that pledge to a guarantee. See sec. 1.166-9(a), Income Tax Regs. The law that applies to the worthlessness of a guarantee is well settled. Normally, the guarantor of an obligation may not deduct his or her guarantee as worthless before he or she pays the creditor. Black Gold Energy Corp. v. Commissioner, 99 T.C. 482, 488 (1992), affd. without published opinion 33 F.3d 62 (10th Cir. 1994); *162 sec. 1.166-9(a), Income Tax Regs, and the cases cited therein. Because no payment was made out of RPI's pledge of funds during its taxable year ended May 1986, i.e., the funds were not applied during that year against the indebtedness they were pledged to secure, we hold that petitioner is not entitled to a bad debt deduction for that year. We will grant respondent's motion with respect to RPI's pledge. To reflect the foregoing, An appropriate order granting in part and denying in part respondent's motion for partial summary judgment will be issued. Footnotes
1. Rule references are to the Tax Court Rules of Practice and Procedure. Section references are to the Internal Revenue Code in effect for the year in issue.↩
2. In the spring of 1985, petitioner and Lippo Holding installed Don Wright as UPT's chief executive officer.↩
3. For the purpose of her motion for partial summary judgment, respondent is not contesting the bona fide nature of these transactions.↩