HOTEL CONTINENTAL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hotel Continental v. Commissioner
Docket No. 5590-93
United States Tax Court
T.C. Memo 1995-364; 1995 Tax Ct. Memo LEXIS 364; 70 T.C.M. (CCH) 295; August 3, 1995, Filed *364 Decision will be entered under Rule 155. For petitioner: Thomas E. Crowe. For respondent: Paul L. Dixon. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined that petitioner is liable for deficiencies in Federal income taxes and additions to tax for the taxable years ended June 30 as follows: Additions to Tax
Sec. Sec.
Sec.
Year
Deficiency
6653(a)(1) 6653(a)(2)
6653(a)(1)(A)
1985
$ 109,707
$ 5,485 *
--  1986
47,816
2,391 *
--  1987
328,255
--  --
$ 16,413
1988
530,138
--  --
26,507
1989
77,476
3,874
--
--  Sec.
Sec.
Year
6653(a)(1)(B)
6661
1985
--
$ 27,427 1986
--
11,954
1987 *
98,477
1988 *
132,534
1989
--
19,369
* 50 percent of the interest due on the entire deficiency.
After concessions, the issues remaining for decision are whether petitioner is entitled to a bad-debt deduction for the taxable year 1989 and whether petitioner is liable for the additions to tax for negligence under section 6653(a) and for substantial understatement under section 6661. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for *365 the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner is a Nevada corporation whose principal place of business was in Las Vegas, Nevada, at the time the petition was filed. Petitioner owned and operated a hotel and gambling casino in Las Vegas. Ira Levy (Levy) was the president and general manager of petitioner during the years in issue. Levy owned 32.67 percent of the outstanding shares of stock in petitioner for the taxable years 1985 and 1986 and 30.42 percent for 1987, 1988, and 1989. Petitioner had two other major shareholders, each owning approximately one-third of the outstanding shares of stock for the years in issue. Levy received compensation of $ 187,214 from petitioner in the 1989 taxable year. Indian Springs Casino (Indian Springs) was a limited partnership operating under the laws of the State of Nevada. In 1985, Indian Springs began construction of a casino in Indian Springs, Nevada. During the time of the construction of the casino, the only debt that Indian Springs owed was *366 a secured construction loan for building the casino facility. Indian Springs was operating at a profit by the end of 1985. Levy was both a limited and general partner of Indian Springs and held a 29-percent interest in the partnership during the relevant period. Irwin Frank (Frank) held a 50-percent interest in Indian Springs and functioned as its managing general partner. During the 1985 taxable year, petitioner was involved in an internal promotional program to encourage travelers to visit Las Vegas and to lodge at petitioner's facility. To alleviate the burden of advertising and promotion on petitioner, Indian Springs agreed to establish an advertising and promotional program that would benefit both petitioner and Indian Springs. To enable Indian Springs to set up such a program, petitioner advanced sums totaling $ 167,000 to Indian Springs between December 31, 1985, and February 12, 1986. By and through its general partners, Indian Springs executed four promissory notes for the sums advanced by petitioner that bore interest at the rate of 12 percent. With the advances received from petitioner, Indian Springs established a promotional program entitled "The Royal Treatment". *367 Based on his experience with advertising and promotional programs, Levy expected that Indian Springs would be able to repay petitioner within 1 year or, at most, 2 years after the notes were executed. Indian Springs, by and through Frank, issued three checks in late 1987 totaling $ 36,000 to petitioner. The checks were "referred to maker" and unpaid. These amounts were added to the debt of Indian Springs, resulting in a principal balance of $ 203,000. Petitioner accrued the interest accumulating on the promissory notes as income and reported that interest on its tax returns for the taxable years prior to 1989. Frank set up a separate entity, the 789 Corporation, to perform the advertising and promotional work for The Royal Treatment program. The 789 Corporation was owned solely by Frank. The 789 Corporation subcontracted work out to various entities, including Advertising Consultants, Inc. (Advertising Consultants). Sometime prior to August 16, 1988, Advertising Consultants filed a lawsuit against both the 789 Corporation and petitioner to collect amounts owed to it by the 789 Corporation for work on The Royal Treatment program. As part of the lawsuit brought by Advertising Consultants, *368 petitioner filed a cross-claim against the 789 Corporation to cover any liability by petitioner to Advertising Consultants. The lawsuit was ultimately settled. Pursuant to the settlement agreement, petitioner paid $ 125,000 to Advertising Consultants, and the 789 Corporation paid $ 75,000 to Advertising Consultants. In addition, petitioner released any claims against Indian Springs for recovery on the promissory notes. Specifically, paragraph 16 of the written settlement agreement provided: Plaintiff and Defendant HOTEL CONTINENTAL, INC., 789 CORPORATION, their officers, directors, shareholders and related entities such as Continental Hotel, Ltd., Indian Springs Hotel & Casino, 95 Corporation and their officers, directors, shareholders and partners hereby release any and all claims they have against the other, whether known or unknown, except as set forth in this Stipulation and pursuant to the Stipulation in open court pertaining to the Cross-claim.
The decision to release Indian Springs of its outstanding obligations to petitioner was jointly approved by the three major shareholders of petitioner, including Levy. Petitioner never made any demand on Indian Springs or on *369 its partners for payment of the amounts advanced and never took any action to collect the debt. On September 16, 1992, an involuntary Chapter 11 petition in bankruptcy was filed on behalf of Indian Springs. Frank admitted during the course of the bankruptcy proceeding that he had personally removed $ 350,000 from Indian Springs. Petitioner's returns for each of the years in issue were prepared by certified public accounting firms. On its 1989 tax return, petitioner deducted $ 252,429 as a bad debt. This amount was the total of the original advances petitioner had made to Indian Springs as well as subsequent advances and accrued interest. Respondent disallowed the entire bad-debt deduction. Respondent also made other adjustments now conceded by petitioner. OPINION Bad Debt
Section 166 provides that a taxpayer may deduct any debt that becomes worthless within the taxable year. Petitioner contends that the advances it made to Indian Springs created a bona fide debt and that the debt became worthless during the 1989 taxable year. Respondent questions whether a bona fide debt existed between petitioner and Indian Springs and, assuming that it did, maintains that petitioner has failed *370 to carry its burden of proving worthlessness. Bona Fide Debt
Section 1.166-1(c), Income Tax Regs., defines a bona fide debt as "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." The existence of a bona fide debt is a factual inquiry that turns on the facts and circumstances of the particular case, and the taxpayer bears the burden of proving that a bona fide debt existed. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). Numerous factors have been identified and considered by courts in determining whether a bona fide debt between related entities exists, including: (1) "thin" or adequate capitalization of the debtor, (2) the presence or absence of a fixed maturity date for repayment, (3) whether the purported creditor participated in management of the debtor, and (4) the intent of the parties. In re Uneco, Inc., 532 F.2d 1204, 1208 (8th Cir. 1976); Estate of Mixon v. United States, 464 F.2d 394, 402 (5th Cir. 1972); A.R. Lantz Co. v. United States, 424 F.2d 1330, 1333 (9th Cir. 1970); *371 O.H. Kruse Grain & Milling v. Commissioner, 279 F.2d 123, 125-126 (9th Cir. 1960). No single factor is decisive in the determination. John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946). The ultimate question is "Was there a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?" Dixie Dairies Corp. v. Commissioner, supra at 494 (quoting Litton Business Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973)). Petitioner and Indian Springs formally documented their debtor-creditor relationship through the issuance of notes. These notes provided for interest, which petitioner accrued as income but never received. Formal indicia of debt are not in themselves sufficient to establish a bona fide indebtedness, but additional evidence suggests here that petitioner did expect repayment from Indian Springs. Although there was no fixed maturity date, Levy testified at trial that petitioner expected Indian Springs to begin to repay the advances *372 as soon as The Royal Treatment program began to generate income. At the time the notes were executed, Indian Springs was solvent and profitable and had only one other debt, a secured obligation on its construction loan. Thus, petitioner could have reasonably concluded that Indian Springs would be financially capable of repaying the advances. Petitioner made the advances specifically to finance an incentive program to be managed and operated by Indian Springs for the benefit of both entities, not as a general capital contribution to the partnership. In light of the evidence presented, we conclude that the obligation of Indian Springs to petitioner did constitute a bona fide debt under section 166. Worthlessness
A bad debt is deductible in the taxable year during which it becomes wholly or partially worthless. Sec. 166(a). Petitioner bears the burden of proving that the debt of Indian Springs became worthless within the 1989 taxable year. Rule 142(a); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133; Crown v. Commissioner, 77 T.C. 582, 598 (1981). Specifically, *373 petitioner must prove that the debt had value at the beginning of the taxable year and that it became worthless during that year. Estate of Mann v. United States, 731 F.2d 267, 275 (5th Cir. 1984); American Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991). Petitioner's bad-debt deduction is limited to its adjusted basis in the obligation. Sec. 166(b). There is no standard test or formula for determining worthlessness within a given taxable year. Crown v. Commissioner, supra at 598. The determination depends upon the particular facts and circumstances of the case. Generally, however, the year of worthlessness is fixed by identifiable events that form the basis of reasonable grounds for abandoning any hope of recovery. United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927); American Offshore, Inc. v. Commissioner, supra at 593; Crown v. Commissioner, supra at 598; Dallmeyer v. Commissioner, 14 T.C. 1282, 1292 (1950). Worthlessness *374 is determined primarily by objective standards. American Offshore, Inc. v. Commissioner, supra at 594; Perry v. Commissioner, 22 T.C. 968, 973 (1954). Petitioner maintains that, in 1989, it determined that Indian Springs would be unable to repay either the amounts advanced to it by petitioner or the accrued interest on that debt. Levy testified that, at the time Advertising Consultants filed its lawsuit against petitioner and the 789 Corporation, he and the other two major shareholders concluded that Frank was not financially able to satisfy either the debt the 789 Corporation owed to Advertising Consultants or the debt Indian Springs owed to petitioner. Levy further testified that he had determined that Frank had mismanaged Indian Springs and that he suspected that Frank may have been embezzling funds from Indian Springs. Levy stated that he considered petitioner fortunate to have had Frank pay $ 75,000 in settlement of the lawsuit filed by Advertising Consultants, in light of Frank's financial difficulties. After the execution of the settlement agreement, the Indian Springs debt was formally extinguished, and the *375 write-off was recorded by petitioner on its 1989 tax return. In 1992, an involuntary bankruptcy proceeding was instituted against Indian Springs. During the course of that proceeding, Frank admitted that he had personally withdrawn $ 350,000 from Indian Springs, thus confirming Levy's suspicions of Frank's malfeasance. Respondent argues that petitioner has failed to meet its burden of demonstrating that the Indian Springs debt became worthless in 1989. Petitioner's determination that the debt was worthless was based solely on its conclusion that Frank would not be able to repay the debt. Respondent maintains that, even if Frank had been unable to repay the Indian Springs debt, under Nevada law, Levy, as the other general partner of Indian Springs, was jointly liable for this obligation. During the 1989 taxable year, Levy held 30.42 percent of the stock of petitioner and received $ 187,214 in compensation. Respondent contends that petitioner has not met its burden of proving worthlessness because it made no showing that either Levy personally or Indian Springs was unable to pay the debt. We agree with respondent that petitioner has failed to demonstrate that the Indian Springs debt *376 became worthless in 1989. Voluntary or bargained for release of a debt does not establish worthlessness. Davies v. Commissioner, 54 T.C. 170, 176 (1970); Fink v. Commissioner, 29 T.C. 1119, 1130-1131 (1958). Petitioner may not simply fail to enforce a debt and then claim a bad debt deduction. Cole v. Commissioner, 871 F.2d 64, 67 (7th Cir. 1989), affg. T.C. Memo. 1987-228. Petitioner presented no explanation as to why it could not collect the debt from Levy. Under Nevada law, a general partner is liable for all the debts and obligations of a partnership. Nev. Rev. Stat. secs. 87.150, 88.455 (1994). Prior to the settlement agreement, petitioner had a right to take action against Levy, the other general partner in Indian Springs. There is nothing in the record suggesting that collection efforts by petitioner against the other general partner of Indian Springs would have been futile. See American Offshore, Inc. v. Commissioner, supra at 595; Perry v. Commissioner, supra at 974; Fink v. Commissioner, supra. *377 Petitioner offered no evidence concerning the net worth of Indian Springs in the year in which the debt was written off other than Levy's testimony that he believed Indian Springs was financially unable to repay the debt. Although an involuntary petition in bankruptcy was filed against Indian Springs in 1992 and Frank's embezzlement from Indian Springs was then disclosed, subsequent events may only be used to evaluate the soundness of the belief that a debt became worthless in a certain year. American Offshore, Inc. v. Commissioner, supra at 597; Estate of Mann v. United States, 731 F.2d 267, 277 (5th Cir. 1984). In sum, it was incumbent upon petitioner to show sufficient objective facts from which it could be concluded that the Indian Springs debt had no potential value at the time of petitioner's voluntary cancellation of this indebtedness. Fox v. Commissioner, 50 T.C. 813, 822-823 (1968). The subjective opinion of Levy alone is insufficient. Fox v. Commissioner, supra at 822; Newman v. Commissioner, T.C. Memo. 1982-61. *378 Negligence
Section 6653(a) for the years in issue provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment and an amount equal to 50 percent of the interest payable on the portion of any underpayment of tax that is attributable to negligence or intentional disregard of rules or regulations. Negligence, as used in section 6653(a), is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Petitioner first argues that respondent did not specify any particular act of negligence on the part of petitioner, and, therefore, the negligence addition to tax should not be sustained. Petitioner is mistaken. Respondent's determination is prima facie correct, and the burden is upon petitioner to prove that this addition to tax is erroneous. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), *379 affg. in part and revg. in part T.C. Memo. 1984-264; Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Petitioner next contends that it is not liable for the negligence addition to tax because it relied upon a public accounting firm to prepare properly its returns for the years in issue. As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). In some circumstances, however, good faith reliance on expert advisers negates applicability of the addition to tax for negligence. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). To avoid liability, a taxpayer must establish the following: (1) That the taxpayer provided the return preparer with complete and accurate information from which the tax return could be properly prepared; (2) that an incorrect return was the result *380 of the preparer's mistakes; and (3) that the taxpayer in good faith relied on the advice of a competent return preparer. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Daugherty v. Commissioner, 78 T.C. 623, 641 (1982). In addition, the taxpayer must show that it at least read or made a cursory review of the prepared returns. Metra Chem Corp. v. Commissioner, supra at 662. Petitioner has failed to establish that the information it provided to its accountants was complete or accurate. Moreover, the record provides no insight as to what review, if any, petitioner made of its prepared returns. The only mention of petitioner's reliance on its accounting firm was in a passing reference to such reliance in Levy's testimony: Q * * * what was the standard practice with regard to the preparation of the income tax returns each year? A The standard practice. I don't know how to answer -- Q How were the accounting records prepared and at what point were they delivered? A I would hope promptly and effectively.
We have *381 no basis upon which to evaluate the reasonableness of petitioner's alleged reliance upon its accountants to prepare the returns. Finally, petitioner argues that the negligence addition to tax is inapplicable because support exists for the positions petitioner took upon its returns. Petitioner maintains that most of the statutory notice adjustments it has now conceded were for debatable timing of income matters or for issues of first impression or for factual issues new or unknown to petitioner. Petitioner, however, did not offer any evidence regarding the stipulated adjustments, and we have no basis to evaluate the positions petitioner took on its returns with respect to these adjustments. Petitioner has failed to meet its burden, and, accordingly, the additions to tax under section 6653(a) are sustained. Substantial Understatement
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or, in the case of a corporate taxpayer, $ 10,000. Sec. 6661(b)(1)(A) and (B). Where an item is not *382 attributable to a tax shelter, the understatement may be reduced by the portion attributable to such item and the addition to tax accordingly reduced if the taxpayer's treatment of the item was based on substantial authority or was adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(i) and (ii). The term "understatement" is defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax shown on the return for the taxable year, reduced by any rebate. Sec. 6661(b)(2). For purposes of section 6661, the amount of tax shown on the return for the taxable year is determined without regard to any net operating loss carryback. Sec. 1.6661-2(d)(2), Income Tax Regs.
Petitioner maintains that there is no "understatement" to which the section 6661 addition to tax applies for the stipulated adjustments for 1985, 1986, and 1987 resulting from the reduction of petitioner's net operating loss carrybacks because such net operating loss carrybacks are "deemed to have been properly reported" by section 1.6661-2(d)(2), Income Tax Regs. The amount of tax shown on the return, however, must be reduced *383 by any "rebate" petitioner has received as a result of the original net operating loss carryback. Thus, respondent maintains that an understatement of tax does result from the stipulated reductions in net operating loss carrybacks. Petitioner argues that the language "reduced by any rebate" in section 6661(b)(2)(A) applies to the word "excess" rather than to the phrase "the amount of the tax imposed shown on the return." Petitioner refers to "the anomaly of dual substantial understatements resulting from the same deduction being applied to two different taxable years". But allowing a taxpayer to understate income taxes for 2 or more years, receive a refund, and then be penalized only on the fraction of the total understatement that occurs in 1 year would be the true anomaly. Cf. Scallen v. Commissioner, 877 F.2d 1364, 1371-1372 (8th Cir. 1989), affg. T.C. Memo. 1987-412. Reducing the amount subject to a penalty by rebates previously received by the taxpayer would undermine the purpose of the penalty. Petitioner next maintains that the section 6661(a) addition to tax should not be imposed because its treatment of each of the *384 adjusted items is supported by substantial authority and/or was adequately disclosed on the returns or in statements attached to the returns. In determining whether substantial authority exists, the relevant types of authorities include the Internal Revenue Code, temporary and final regulations, court cases, and administrative pronouncements. Sec. 1.6661-3(b)(2), Income Tax Regs. "There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. The standard for substantial authority is considered more stringent than the reasonable basis standard used generally regarding additions to tax under section 6653(a) for negligence. Sec. 1.6661-3(a)(2), Income Tax Regs.
Petitioner has not demonstrated that substantial authority exists for its tax treatment of any of the adjusted items. With the exception of the bad-debt, petitioner neglects to cite any authority for the adjusted items. It concedes lack of substantial authority as to at least one of them. There is no substantial authority supporting petitioner's *385 bad-debt deduction. The statute and regulations are not authority for petitioner's position because the debt did not become worthless within the taxable year in which petitioner took the deduction. Cases that are factually distinguishable are not substantial authority. Antonides v. Commissioner, 91 T.C. 686, 702-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Petitioner also argues that it adequately disclosed the relevant facts affecting the tax treatment of the various adjusted items. The regulations specify two types of adequate disclosure under section 6661(b)(2)(B)(ii): disclosure in statements attached to the return and disclosure on the return. Sec. 1.6661-4(b) and (c), Income Tax Regs. Disclosure in an attached statement is adequate for purposes of section 6661 if it is made on Form 8275 or on a statement that includes a caption identifying the statement as disclosure under 6661. Sec. 1.6661-4(b)(1)(i), Income Tax Regs.
Petitioner maintains that it made adequate disclosure regarding its deduction for outside services, for nondeductible settlement fees, and for an omitted section 1245 recapture gain in statements attached *386 to petitioner's returns for the relevant taxable years. (Petitioner concedes that other issues were not adequately disclosed.) Because petitioner did not identify any statements as disclosure pursuant to section 6661, these statements do not comply with section 1.6661-4(b)(1), Income Tax Regs.
Petitioner further contends that it made adequate disclosure regarding the adjusted tax items on the returns themselves. Section 1.6661-4(c), Income Tax Regs., provides that respondent may, by revenue procedure, prescribe the circumstances in which information provided on the return will be adequate disclosure for purposes of section 6661. Consistent therewith, respondent has issued Rev. Proc. 87-48, 1987-2 C.B. 645, applicable to returns filed in 1986; Rev. Proc. 88-37, 1988-2 C.B. 560, applicable to returns filed in 1987; and Rev. Proc. 89-11, 1989-1 C.B. 797, applicable to returns filed in 1988. These revenue procedures list categories of controversies and forms that constitute sufficient disclosure of each controversy. Petitioner did not comply with the specific *387 requirements established by respondent for disclosure by provision of information on the face of a return. Where a taxpayer fails to comply with the revenue procedures issued in accordance with section 1.6661-4(c), Income Tax Regs., and fails to make specific reference to section 6661 in attached statements, the requirements of adequate disclosure on the return can nonetheless be satisfied by providing, on the return, sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Petitioner, however, merely deducted or failed to report the items in question. Facts sufficient to identify the controversy were absent. Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661 on a showing that (1) there was reasonable cause for the understatement and (2) the taxpayer acted in good faith. Petitioner finally contends that respondent should have waived the section 6661 addition to tax. The denial of a waiver under section 6661(c) is reviewable by the Court on an abuse-of-discretion basis. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). *388 The most important factor in determining reasonable cause and good faith under section 6661(c) is "the extent of the taxpayer's effort to assess * * * [its] proper tax liability under the law." Id. at 1084; sec. 1.6661-6(b), Income Tax Regs. Reliance on professional advice constitutes a showing of reasonable cause and good faith under section 6661(c) only if, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Vorsheck v. Commissioner, 933 F.2d 757, 759 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court dated February 12, 1990; sec. 1.6661-6(b), Income Tax Regs.
Petitioner has not shown that there was reasonable cause for the understatements or that it acted in good faith. As discussed above, petitioner offered no evidence showing what information or documentation it provided to its accountants or what review, if any, was made of its prepared returns. We cannot conclude that it was an abuse of discretion to refuse to waive the additions to tax. Accordingly, respondent's determinations as to the section 6661 addition to tax are sustained. Decision *389 will be entered under Rule 155.