T.C. Memo. 2003-204

UNITED STATES TAX COURT

DALE H. AND EDITH LITTLEFIELD SUNDBY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13000-01.                    Filed July 11, 2003.

Dale H. and Edith Littlefield Sundby, pro sese.

<u>Michael S. Hensley</u>, <u>Kevin M. Brown</u>, <u>James A. Nelson</u>, and

<u>Jeffrey A. Schlei</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Chief Judge</u>:  Respondent determined a deficiency in

petitioners' 1997 Federal income tax of $77,372.  The issue to be

decided is whether petitioners are entitled to a bad debt

deduction of $350,000 which they claimed on Schedule C of their

1997 Federal income tax return.[1]  All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case fully stipulated without trial pursuant to Rule 122.  The parties' stipulations of fact and the accompanying exhibits are hereby incorporated by this reference and are found as facts in the instant case. Petitioners resided in San Diego, California, when their petition was filed.

On April 6, 1993, Access Anytime Anywhere, Inc. (Access), was incorporated in the State of California.  Petitioners were the sole shareholders of Access.  On May 12, 1993, Access was renamed Navis Communications (Navis).  Petitioners were the sole shareholders of Navis.  Navis was assigned a Federal Employer Identification Number.  On June 1, 2001, Navis's corporate status was suspended by the California Franchise Tax Board.

On November 9, 1994, Search2000 was incorporated in the State of California.  Petitioner Dale H. Sundby (Mr. Sundby) was the president of Search2000.  On September 19, 1995, Search2000 was renamed PowerAgent, Inc.  Mr. Sundby was the president of PowerAgent, Inc.  The California Franchise Tax Board suspended PowerAgent, Inc.'s corporate status on January 2, 2001.  Navis

---

[1]Petitioners failed to file a brief addressing this issue.

and Search2000 were corporations during 1995. Navis held itself out as a corporation. Navis was engaged in limited business activity during 1994, as reflected in a bill from a law firm,[2] a long-distance phone bill, and several shipping receipts. Navis remained a California corporation until its corporate status was suspended.

On July 21, 1995, Search2000 held a board of directors meeting, and the minutes of that meeting state in part:

> WHEREAS, the Corporation desires to accept the offer of Navis Communications, a California Sole Proprietorship,[3] to sell all of its ownership rights to business plans and intellectual property defined as WorkWorld and PowerAgent.

> RESOLVED, that the Corporation purchase all rights to business plans and intellectual property defined as WorkWorld and PowerAgent for a consideration of $300,000.00.

On July 21, 1995, Search2000 created the following instrument in connection with the alleged purchase by Search2000 of business plans and intellectual property, defined as WorkWorld and PowerAgent, which were owned by Navis:

---

[2]The bill indicated that the law firm, Higgs, Fletcher & Mack, of San Diego, California, performed services related to the incorporation of Navis Communication.

[3]We note that petitioners stipulated that Access was incorporated under the laws of the State of California and that it later changed its name to Navis. Petitioners stipulated that Navis was a corporation in 1995. We shall treat Navis as a corporation. Petitioners have not provided this Court with evidence that Navis elected to be treated as a subchapter S corporation under sec. 1362(a).

## PROMISSORY NOTE

July 21, 1995

<u>$300,000.00</u>

FOR VALUE RECEIVED, Search2000, Inc., a California Corporation (the "Maker"), promises to pay Navis Communication (the "Holder"), at the offices of the Holder of this Note or at such other place as the Holder of this Note may designate, the principal sum of $300,000.00, together with interest on the unpaid principal balance of this Note from time to time outstanding at the rate of 8% per year until paid in full. The principal sum of this Note and all accrued interest thereon shall be payable on demand. Interest on this Note shall be computed on the basis of a year of 365 days for the actual number of days elapsed. All payments by the Maker under this Note shall be in immediately available funds.

In no event shall any interest charged, collected or reserved under this Note exceed the maximum rate then permitted by applicable law and if any such payment is paid by the Maker, then such sum shall be credited by the Holder as a payment of principal.

All payments by the Maker under this Note shall be made without set-off or counterclaim and be free and clear and without any deduction or withholding for any taxes or fees of any nature whatsoever, unless the obligation to make such deduction or withholding is imposed by law. The Maker shall pay and save the Holder harmless from all liabilities with respect to or resulting from any delay or omission to make any such deduction or withholding required by law.

Whenever any amount is paid under this Note, all or part of the amount paid may be applied to principal, premium or interest in such order and manner as shall be determined by the Holder in its discretion.

In the event of any actual or deemed entry or any order for relief with respect to the Maker under the Federal Bankruptcy Code, this Note, all interest thereon and all other amounts payable hereunder shall automatically become and be due and payable, without presentation, demand, protest, or any notice of any kind, all of which are hereby expressly waived by the Maker.

The Maker agrees to pay on demand all costs of collection, including reasonable attorneys' fees, incurred by the Holder in enforcing the obligations of the Maker under this Note.

No delay or omission on the part of the Holder in exercising any right under this Note shall operate as a waiver of such right or of any other right of such Holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion.

None of the terms or provisions of this Note may be excluded, modified or amended except by a written instrument duly executed on behalf of the Holder expressly referring to this Note and setting forth the provision so excluded, modified or amended.

All rights and obligations hereunder shall be governed by the laws of the Sate of California.
Search2000, Inc.

By:  [signed] Dale Sundby

Name:  Dale Sundby

Title:  Chairman and CEO

Neither petitioners nor Navis reported on any Federal income tax return the sale of a business plan or intellectual property rights.  Neither petitioners nor Navis reported on any Federal income tax return the sale of PowerAgent or WorkWorld.  Moreover, Navis did not file a Federal income tax return for 1995. Additionally, there is no evidence suggesting that WorkWorld had any value.  Moreover, there is no evidence to suggest that the promissory note was ever sold, transferred, or otherwise conveyed to petitioners by Navis.

Neither petitioners nor Navis reported on any Federal income

tax return interest income arising from the sale of a business plan or intellectual property. Neither petitioners nor Navis reported on any Federal income tax return interest income arising from the sale of PowerAgent or WorkWorld.

Petitioners claimed a bad debt deduction on Schedule C of their 1997 Federal income tax return. On Schedule C, Mr. Sundby indicated that his principal business was that of a lender, reporting income on the cash basis. Mr. Sundby also indicated that he did not "materially participate" in the operation of this business.

## Discussion

Petitioners bear the burden of proving that they are entitled to their claimed bad debt deduction. Rule 142(a);[4] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). To avail themselves of a bad debt deduction pursuant to section 166,[5]

___

[4] Sec. 7491 does not apply in the instant case to shift the burden of proof to respondent because petitioners neither alleged that sec. 7491 was applicable nor established that they fully complied with the requirements of sec. 7491(a)(2).

[5] Sec. 166. BAD DEBTS.

   (a) General Rule.--

      (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

      (2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the
                                                    (continued...)

petitioners must prove (1) a bona fide debt existed between them and Search2000, and (2) the debt became worthless in 1997, the year in which they claimed the deduction. See also <u>Dixie Dairies v. Commissioner</u>, 74 T.C. 476, 493-494 (1980); <u>Kim v. Commissioner</u>, T.C. Memo. 1995-598; <u>Hotel Continental, Inc. v.</u>

---

[5](...continued)
> part charged off within the taxable year, as a deduction.

> (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

> (d) Nonbusiness Debts.--

>> (1) General rule.--In the case of a taxpayer other than a corporation--

>>> (A) subsection (a) shall not apply to any nonbusiness debt; and

>>> (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.

>> (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than–

>>> (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

>>> (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

<u>Commissioner</u>, T.C. Memo. 1995-364, affd. without published opinion 113 F.3d 1241 (9th Cir. 1997).

A bona fide debt is a debt which "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs.; see <u>Dixie Dairies Corp. v. Commissioner</u>, <u>supra</u> at 494. The existence of a bona fide debtor-creditor relationship may be determined by examination of all relevant facts. <u>Fisher v. Commissioner</u>, 54 T.C. 905, 909 (1970).

In deciding whether a bona fide debt existed, we may consider a number of factors, including: (1) Whether evidence of indebtedness exists, such as a note; (2) whether any collateral or security is requested; (3) whether a demand for repayment has been made; (4) whether the parties' records reflect the transaction as a loan; (5) whether any repayments have been made; and (6) whether any interest was charged. See <u>Kim v. Commissioner</u>, <u>supra</u>; see also <u>Dixie Dairies Corp. v. Commissioner</u>, <u>supra</u>; <u>Baker Commodities, Inc. v. Commissioner</u>, 48 T.C. 374 (1967), affd. 415 F.2d 519 (9th Cir. 1969); <u>Bragg v. Commissioner</u>, T.C. Memo. 1993-479. However, "Formal indicia of debt are not in themselves sufficient to establish a bona fide indebtedness". <u>Hotel Continental, Inc. v. Commissioner</u>, <u>supra</u>.

The alleged debt transaction requires close scrutiny to determine whether the parties were engaged in an arm's-length

transaction because petitioners controlled both corporations.[6] See <u>Baldwin v. Commissioner</u>, T.C. Memo. 1993-433; see also <u>Ludwig Baumann & Co. v. Commissioner</u>, T.C. Memo. 1961-271, affd. 312 F.2d 557 (2d Cir. 1963).

In the instant case, petitioners have failed to prove their entitlement to the bad debt deduction claimed on their return. Petitioners have failed to prove that Search2000 and Navis were engaged in an arm's-length transaction or that Navis and Search2000 ever entered into a valid debtor-creditor relationship. See Rule 142(a). While the record contains a promissory note and the minutes of the July 21, 1995, Search2000 board of directors meeting authorizing Search2000 to purchase the alleged WorkWorld and PowerAgent business plans and intellectual property from Navis, the record contains no evidence (other than the promissory note) that the alleged transaction actually took place. Moreover, there is no evidence that the note was acquired, transferred, or otherwise conveyed by Navis to petitioners, who are claiming the bad debt deduction on Schedule C of their personal return.

---

[6]Mr. Sundby was the president of both Search2000 and Navis in 1995. The minutes of the July 21, 1995, Search2000 board of directors meeting indicate that petitioners and Mr. J. Tim Konold were on the Search2000 board of directors. Moreover, the promissory note indicates that Mr. Sundby was the chairman and CEO (chief executive officer) of Search2000. The California Franchise Tax Board's records list Mr. Sundby as the only officer or director of both Search2000 (later PowerAgent, Inc.) and Navis.

Neither Navis nor petitioners reported the sale of the alleged business plan and intellectual property on its or their 1995 Federal income tax return.  There is no indication that Navis even filed a Federal income tax return for 1995.  Petitioners have not shown that the alleged business plan and intellectual property, PowerAgent and WorkWorld, had any value.  Petitioners have not presented this Court with any evidence that the alleged business plan and intellectual property even existed.

The promissory note, a demand note, lacks a date of maturity and does not require regular interest and principal payments to be made.  There is no evidence that Search2000 made any interest or principal payments on the promissory note.  Moreover, there is no evidence that either Navis or petitioners demanded payment from Search2000.  There is no evidence that either Navis or petitioners required Search2000 to provide collateral for the promissory note.  Petitioners have failed to show that, when the promissory note was created, there was a genuine intention to create a bona fide debt.[7]

---

[7]Petitioners alleged on their 1997 Federal income tax return that Mr. Sundby was a lender.  Petitioners must prove that Mr. Sundby was in a trade or business and that the alleged debt was connected to that trade or business in order to take their claimed deduction.  Sec. 166(d); see Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987) ("the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit.").  Moreover, on Schedule C of their 1997 Federal income tax return, petitioners indicated that Mr. Sundby did not

(continued...)

Assuming arguendo that petitioners were able to prove that a bona fide debt was created with respect to the July 21, 1995, transaction, petitioners still would not be entitled to the bad debt deduction. Petitioners have failed to show that they are entitled to deductions that on their face would be allowable to Navis, if at all. The promissory note was made between Search2000 and Navis. Because Navis was incorporated under the laws of the State of California and there are other indicia of its separate status, we shall treat it as a separate entity. See Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943).

Since the promissory note was made payable to Navis, it is Navis that would be entitled to the bad debt deduction, if any were to be allowed, and petitioners have not shown that the note was transferred to them personally. Moreover, petitioners have not shown that any S corporation election was in effect for Navis for the year in issue.

On the basis of the foregoing, we hold that petitioners may

---

[7](...continued)
materially participate in the business of lending. Petitioners have not provided this Court with any evidence which supports their contention that Mr. Sundby was in the trade or business of being a lender during 1995, 1996, or 1997. Petitioners have failed to show that Mr. Sundby continually or regularly engaged in lending for income or profit. Even though Mr. Sundby was president of both Search2000 and Navis, full-time service to a corporation does not necessarily amount to engaging in a trade or business (other than the trade or business of being an employee). See Whipple v. Commissioner, 373 U.S. 193, 203 (1963).

not claim a deduction for a bad debt, pursuant to section 166(a). We have considered all of the contentions and arguments of the parties that are not discussed herein,[8] and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[8]Having held that petitioners have failed to show that a bona fide debt exists, we need not decide whether the claimed debt became worthless in 1997.