T.C. Memo. 2005-234


UNITED STATES TAX COURT


WILLIAM A. EGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4568-04.                    Filed October 5, 2005.


<u>Peter B. Tiede</u>, for petitioner.

<u>Allison O. Woodbury</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $30,618 deficiency in petitioner's Federal income tax for 1998 and that petitioner was liable for a $5,789 accuracy-related penalty for substantial understatement under section 6662(a).[1]  After concessions,[2] we

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Petitioner conceded respondent's disallowance of
(continued...)

are asked to decide whether petitioner is entitled to deduct $158,381 as a business bad debt in 1998 under section 166 and whether the accuracy-related penalty under section 6662(a) should apply. We hold that petitioner is not entitled to deduct $158,381 as a business bad debt and that the accuracy-related penalty applies.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Anoka, Minnesota, at the time he filed the petition in this case.

Petitioner has owned and operated Egan Oil, a sole proprietorship, for 43 years. Egan Oil is a distributor of Exxon Mobil petroleum products. Egan Oil purchases petroleum products from Exxon Mobil and then resells them to customers such as service stations and convenience stores.

One of Egan Oil's customers was Brooks Foods, Inc. (Brooks Foods), a chain of food stores owned by a prominent local businessman named Brooks Hauser. Mr. Hauser encountered business difficulties in 1993 and 1994 and fell behind on his payments to Egan Oil for petroleum products Brooks Foods had purchased. Petitioner knew Mr. Hauser was attempting to rebuild his business and was seeking to refinance. To protect himself from the rapidly increasing balance, petitioner decided to allow only a

[2](...continued)
petitioner's net farm loss and respondent's reduction of petitioner's home mortgage interest deduction.

balance of $400,000 at any one time.  This limit was approximately a week's worth of Brooks Foods' purchases of petroleum products from Egan Oil.  If Brooks Foods owed more than $400,000, Egan Oil would not deliver any more petroleum products to Brooks Foods until Brooks Foods reduced its outstanding balance below $400,000.

Brooks Foods was approaching its $400,000 credit limit with Egan Oil in May 1993.  To allow Brooks Foods to continue buying fuel from Egan Oil, Mr. Hauser made two personal notes in May 1993, each for $100,000, in favor of petitioner.

These notes represented Mr. Hauser's personal guaranty that the $200,000 Brooks Foods owed to petitioner would be paid.  Although there is nothing in the record showing Mr. Hauser ever made any payments on these notes, Brooks Foods did continue purchasing and paying for fuel from Egan Oil.  Mr. Hauser also informed petitioner that he made petitioner a beneficiary on the life insurance policy insuring Mr. Hauser's life.

Mr. Hauser died in 1994 with a balance still owing from Brooks Foods to Egan Oil.  After Mr. Hauser's death, petitioner contacted the life insurance company insuring Mr. Hauser's life, but learned that despite Mr. Hauser's representations, petitioner was not, in fact, a beneficiary of the policy insuring Mr. Hauser's life.

Petitioner began further collection efforts in 1995. Petitioner first unsuccessfully demanded payment from Brooks Foods. Petitioner then filed a lawsuit against Brooks Foods and Peggy Ann Hauser (Ms. Hauser), Mr. Hauser's widow, to attempt to recover the debt. Ms. Hauser's attorneys responded by a letter to petitioner in February 1995, stating that the suit against Ms. Hauser should be dismissed as she had no active involvement in Brooks Foods. In addition, the letter stated that secured creditors or other parties who became shareholders before Mr. Hauser's death had control over all the stock of Brooks Foods. Petitioner could not recall the outcome of the litigation at the time of trial in this case, but he believed it had gone to court and was apparently unsuccessful. Ms. Hauser later filed bankruptcy and received a discharge in 1998.

Petitioner reported Egan Oil's income and expenses using the accrual method on a Schedule C, Profit or Loss from Business, for 1998. Petitioner deducted $158,381 in 1998 as a business bad debt attributable to Brooks Foods. Petitioner reported taxable income of $7,442 and tax of $1,052.

Petitioner claimed that Brooks Foods owed $420,000 in total to Egan Oil and that $200,000, represented by the notes, was secured. Petitioner's accountant, Emile Rabinowitz (Mr. Rabinowitz), advised petitioner to deduct $158,381, but neither petitioner nor Mr. Rabinowitz explained how they computed this amount. At the time of trial, petitioner no longer had records or business ledgers for 1992 through 1995 reflecting deliveries to, or accounts receivable from, Brooks Foods. Mr. Rabinowitz

did not think it necessary for petitioner to keep these records because respondent had already audited petitioner's gross receipts for 1992 through 1995 and those years had been settled.

Federal and State regulations required petitioner to keep books and records for his business recording each gallon of the approximately 40 million gallons that Egan Oil sold each year. Petitioner had a system to track sales on a 3-day and a monthly basis. Several different taxing authorities examined petitioner's records, including respondent as well as State sales tax and excise tax authorities.

Petitioner's accountant, Mr. Rabinowitz, was convicted in 1994 of conspiracy to defraud and impede the Internal Revenue Service (IRS) and of filing a false income tax return. Mr. Rabinowitz was imprisoned for approximately 3 years for these crimes. Petitioner was aware of the trial, conviction, and imprisonment of Mr. Rabinowitz, but he was not involved in the crime or the criminal proceedings against Mr. Rabinowitz.

Respondent examined petitioner's return for 1998 and issued petitioner a Notice of Deficiency dated December 16, 2003 (deficiency notice), disallowing petitioner's business bad debt deduction attributable to Brooks Foods and determining that the accuracy-related penalty should be imposed.[3] Petitioner timely filed a petition for review with this Court.

-----

[3]In the deficiency notice, respondent also disallowed petitioner's net farm loss and reduced petitioner's home mortgage interest deduction. Petitioner has conceded these adjustments. Therefore, the only issues before us are the business bad debt deduction and the accuracy-related penalty.

OPINION

We are asked to decide whether petitioner may deduct $158,381 as a business bad debt in 1998. Respondent argues that petitioner may not deduct $158,381 as a business bad debt because petitioner has not substantiated the amount of the deduction nor established that the debt became worthless in 1998. Respondent also argues that the accuracy-related penalty should be imposed.

Petitioner admits that he does not have records supporting the deduction. Petitioner asserts that respondent is estopped from arguing that petitioner lacks the requisite documentation because respondent audited petitioner's gross receipts for 1994 and that year has been settled. Petitioner also argues that he has established that Brooks Foods owed Egan Oil more than the $158,381 claimed and that it is irrelevant when petitioner claimed the deduction because the deduction would have resulted in a net operating loss that petitioner could have carried backward or forward under section 172. Sec. 172(b)(1)(A). On this basis, petitioner also argues that the accuracy-related penalty should not be imposed. We address each issue in turn. We begin with the burden of proof.

I.   Burden of Proof

In general, the Commissioner's determinations in the deficiency notice are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances, however, section 7491(a)

shifts the burden of proof to the Commissioner provided the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner's reasonable requests.  Id.[4]

We decline to shift the burden of proof to respondent. Petitioner has not substantiated the bad debt deduction nor maintained the required records.[5]  Sec. 7491(a)(2)(A) and (B). The burden of proof, therefore, remains with petitioner.

---

[4]Sec. 7491 is effective with respect to court proceedings arising in connection with examinations by the Commissioner commencing after July 22, 1998, the date of enactment of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.

[5]Petitioner relies on the footnote to the Senate report on sec. 7491 to argue that he should still be entitled to shift the burden of proof because his records were lost through no fault of his own.  See S. Rept. 105-174 at 46 n.27 (1998), 1998-3 C.B. 537, 582.  Petitioner's reliance is misplaced.  First, petitioner misinterprets the meaning of the footnote.  The Senate was describing the rule that permits reconstruction of records in a situation where records are destroyed by no fault of the taxpayer and stated that these existing rules would continue to apply. See id.; see, e.g., sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985).  The footnote does not suggest that a taxpayer who failed to maintain any records may still shift the burden of proof to the Commissioner.  Second, petitioner has not introduced evidence that he maintained the requisite records.  If the records generated by his periodic reporting system for each gallon of gas sold were indeed damaged, petitioner presumably kept ledgers or journal entries showing accounts receivable and the outstanding balance.  No evidence of this type was introduced, however.  Further, petitioner introduced no evidence of the damage other than a vague allusion in Mr. Rabinowitz's testimony that the backup records "got wet or something, moldy" and were therefore discarded.  The paucity of the records introduced leaves us unable to assess whether it was appropriate to discard the backup records.

II.  Substantiation

We next address whether petitioner is entitled to the $158,381 business bad debt deduction respondent disallowed in the deficiency notice.

Deductions are a matter of legislative grace, and the taxpayer has the burden of proving that he or she is entitled to the claimed deductions.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  This includes substantiating the amounts claimed as deductions by maintaining the records necessary to establish that he or she is entitled to the deduction.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs.  While we may estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, we must have some basis on which an estimate may be made.  Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, supra at 560.

Petitioner failed to introduce evidence to substantiate the amount of the bad debt deduction.  While petitioner introduced two notes made by Mr. Hauser, the notes are not in the amount of the deduction, and petitioner did not explain how the $158,381 amount was calculated, nor how the $158,381 related to the $200,000 of notes or the $420,000 of claimed indebtedness Brooks

Foods owed to petitioner.  Moreover, petitioner introduced no business records showing how much Brooks Foods had purchased from Egan Oil nor any records of what the outstanding balance was from time to time.  We are left to speculate as to the amount and are therefore unable to estimate the amount of the deduction under the <u>Cohan</u> rule.  See <u>Cohan v. Commissioner</u>, <u>supra</u> at 543-544; <u>Worthington v. Commissioner</u>, T.C. Memo. 1999-113; <u>Kim v. Commissioner</u>, T.C. Memo. 1995-598.  Introducing evidence of a debt is not sufficient to substantiate the deduction of a different amount.  The amount of the deduction is what must be substantiated.  See <u>Hradesky v. Commissioner</u>, <u>supra</u>.

Petitioner also argues that respondent should be estopped from arguing that petitioner lacked the necessary documentation. Petitioner, relying on a previous audit of petitioner's gross receipts for 1994, explained that he considered the year closed and therefore destroyed records for 1994.  We disagree.  While the gross receipts audit may have shown the amount sold, it in no way establishes how much Brooks Foods purchased or, more importantly, how much Brooks Foods owed.  Petitioner failed to introduce evidence of ledgers or journal entries he presumably kept showing his accounts receivable and the outstanding balance, essential information that would prove the correct amount of the deduction.

Moreover, we are skeptical how an astute businessman like petitioner expected to be repaid the amount owed if he lacked the documentation to show how much Brooks Foods owed.  If petitioner

wished to deduct the bad debt in 1998, petitioner should have taken measures to preserve the requisite records, even though the sales to which the alleged debt related were in 1994.

Accordingly, we find that petitioner has not introduced evidence to substantiate the deduction, and therefore, petitioner may not deduct any amount with respect to the bad debt allegedly owed him by Brooks Foods.[6]

III. Year of Worthlessness

We next address petitioner's argument that it is irrelevant which year petitioner claimed the deduction because it would have created a net operating loss that petitioner could have carried forward or backward under section 172. See sec. 172(b)(1)(A). Petitioner's position is contrary to established law.

The bad debt deduction is available only for those debts that become worthless during the taxable year. Sec. 166(a)(1). Moreover, petitioner must prove that the debt had value at the beginning of the year and that it became worthless during that

---

[6]Petitioner also failed to prove that the debt was bona fide. See sec. 166(a)(1). Petitioner did not show that a valid, enforceable obligation was created to pay a fixed or determinable sum of money. See sec. 1.166-1(c), Income Tax Regs. In addition, petitioner did not show whether interest was charged, whether Egan Oil recorded the amount allegedly owed as a debt on its books, whether any payments were made on the debt, or whether Egan Oil had any collateral other than the note or the alleged life insurance policy. We have no proof of these facts other than petitioner's own testimony that a petroleum purchase transaction took place between Brooks Foods and Egan Oil. The notes Mr. Hauser made to guarantee payment, simply a formal indication that a debt was owed, are not sufficient to establish that a bona fide debt existed. See Sundby v. Commissioner, T.C. Memo. 2003-204; Hotel Cont'l., Inc. v. Commissioner, T.C. Memo. 1995-364, affd. without published opinion 113 F.3d 1241 (9th Cir. 1997).

year. Hotel Cont'l., Inc. v. Commissioner, T.C. Memo. 1995-364, affd. without published opinion 113 F.3d 1241 (9th Cir. 1997). Worthlessness is an objective determination, but is generally fixed by identifiable events that form the basis of reasonable grounds for abandoning any hope of recovery. Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 594 (1991); Dustin v. Commissioner, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (9th Cir. 1972); Hotel Cont'l., Inc. v. Commissioner, supra. Debts are wholly worthless when the taxpayer had no reasonable expectation of repayment. Crown v. Commissioner, 77 T.C. 582, 598 (1981).

Petitioner is not entitled to a bad debt deduction in 1998 because petitioner has failed to show the debt had value at the beginning of 1998. In fact, the evidence of petitioner's collection efforts in earlier years tends to show that any value the debt had was lost before 1998. For example, Mr. Hauser died in 1994. Mr. Hauser was the sole or majority shareholder of Brooks Foods. There is evidence that secured creditors or other parties who became shareholders of Brooks Foods before Mr. Hauser's death had control over all the stock shortly after Mr. Hauser died. In addition, correspondence from the life insurance company that insured the life of Mr. Hauser in 1994 indicated petitioner was not entitled to any life insurance proceeds. Petitioner filed a lawsuit against Brooks Foods and Ms. Hauser attempting to recover the debt in 1995, which was ultimately fruitless. This evidence supports the conclusion that the debt had no value by the beginning of 1998.

The only evidence linking the debt to 1998 is Ms. Hauser's discharge in bankruptcy for that year.  We find no connection between Ms. Hauser's bankruptcy and the claimed bad debt.  Ms. Hauser was not the debtor, and she was not connected to the business.  Moreover, petitioner has not shown how Ms. Hauser could otherwise be liable for Brooks Foods' debts.  Accordingly, we find her bankruptcy discharge is of no consequence to the worthlessness of the debt.  In fact, the 1995 letter to petitioner from Ms. Hauser's attorneys indicated to petitioner that he would not likely collect from Ms. Hauser.  Petitioner did not introduce any evidence of actions petitioner took with respect to the debt from 1995 to 1998.  Unfortunately, it appears that Mr. Hauser duped petitioner the same as Ms. Hauser's attorneys stated that Mr. Hauser had duped others.

We are convinced that any debt of Brooks Foods to Egan Oil had no value before 1998.  Petitioner may not, therefore, deduct the debt owed by Brooks Foods in 1998 because petitioner has not substantiated the amount of the deduction nor shown that it became worthless in 1998.

IV.  Accuracy-Related Penalty

We turn now to respondent's determination in the deficiency notice that petitioner is liable for the accuracy-related penalty under section 6662.  Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent determined that petitioner is liable for the accuracy-related penalty for a substantial understatement of income tax under section 6662(b)(2) for 1998. There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.

Petitioner reported tax due of $1,052, while respondent determined the required tax due was $31,670, and therefore determined a deficiency of $30,618. Petitioner understated his income tax for 1998 in an amount greater than $5,000 or 10 percent of the tax required to be shown on the return. Respondent has, therefore, met his burden of production with respect to petitioner's substantial understatement of income tax.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs.

-14-

When a taxpayer selects a competent tax adviser and supplies him or her with all relevant information, it is consistent with ordinary business care and prudence to rely upon the adviser's professional judgment as to the taxpayer's tax obligations. United States v. Boyle, 469 U.S. 241, 250-251 (1985). To prove reasonable cause due to reliance on the advice of a tax adviser, however, the taxpayer must show that the adviser was a competent professional with sufficient expertise to justify reliance. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); Ellwest Stereo Theatres v. Commissioner, T.C. Memo. 1995-610.

Petitioner bears the burden of proof with respect to the defenses to the accuracy-related penalty. Higbee v. Commissioner, supra. Petitioner has not proven that either his attorneys or accountants, on whom he claims to have relied, were competent professionals with sufficient expertise to justify reliance or that he provided them with all relevant information. See Ellwest Stereo Theatres v. Commissioner, supra. Petitioner introduced no evidence of the identity of the attorneys on whom he relied, much less their qualifications and expertise in terms of tax matters. See id. We therefore do not find that petitioner has shown these advisers to be competent professionals with significant expertise so that his reliance on them is justified. See Neonatology Associates, P.A. v. Commissioner, supra; Ellwest Stereo Theatres v. Commissioner, supra.

Petitioner does claim to have relied on the advice of Mr. Rabinowitz, his accountant, who testified at trial. We note, however, that petitioner knew of Mr. Rabinowitz's trial, conviction in 1994, and incarceration for conspiracy to defraud and impede the IRS and for filing a false tax return. We do not find that under these circumstances any reliance upon Mr. Rabinowitz for tax advice was justified. Nor is there proof that Mr. Rabinowitz was supplied with all information relevant to the items on petitioner's return. Thus, we do not find that petitioner acted with reasonable cause and in good faith.

After considering all of the facts and circumstances, we find that petitioner has failed to establish that he had reasonable cause and acted in good faith with respect to the understatement. Accordingly, we find that the accuracy-related penalty applies to petitioner's underpayment in 1998.

We therefore find that petitioner may not deduct the $158,381 as a bad debt in 1998 and that petitioner is liable for the accuracy-related penalty. Accordingly, we shall sustain respondent's determinations in the deficiency notice.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.